UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH MERCOLA, as Trustee of the Joseph M. Mercola Declaration of Trust, JANET SELVIG, as Trustee of the Mercola Insurance Trust, and MERCOLA.COM HEALTH RESOURCES, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> MOSTAFA ABDOU, MARK ZIEBOLD, and THE KOENIG GROUP, LLC, <br><br> Defendants/Third-Party Plaintiffs, <br><br> vs. <br><br> MICHAEL A. PASSANANTI, individually and as agent of DUGGAN BERTSCH, LLC, DUGGAN BERTSCH, LLC, ANDREW BENNETT, individually and as agent of AXA ADVISORS, LLC, and AXA ADVISORS, LLC d/b/a Business Strategies Group of Illinois, <br><br> Third-Party Defendants. | 14 C 8170 <br><br> Judge Gary Feinerman |

**MEMORANDUM OPINION AND ORDER**

Joseph Mercola (along with his sister and his company, who can be ignored) alleges in this diversity suit that attorney Mark Ziebold, insurance broker Mostafa Abdou, and Abdou's employer, The Koenig Group, LLC, hoodwinked him into purchasing several premium financed life insurance policies. Doc. 139. The operative complaint alleges legal malpractice against Ziebold, breach of fiduciary duty against Abdou and Koenig, and common law and statutory fraud against Abdou. Earlier in the case, the court denied Defendants' motions to dismiss. Docs. 59-60 (reported at 2015 WL 3545414 (N.D. Ill. June 5, 2015)); Docs. 66-67 (reported at 2015 WL 4475287 (N.D. Ill. July 21, 2015)).

1

After answering, Defendants—whom this opinion will call "Third-Party Plaintiffs"—filed third-party complaints under the Illinois Joint Tortfeasor Contribution Act ("JTCA"), 740 ILCS 100/2(a), against the investment advisor AXA Advisors, LLC, its agent Andrew Bennett, and the law firm Duggan Bertsch, LLC (and a Duggan partner, who can be ignored). Docs. 176-78. Because the third-party complaints are materially identical, they will be referred to in the singular and only one will be cited. Third-Party Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the third-party complaints. Docs. 196, 213, 215. In addition, Duggan has moved under the JTCA for a finding that the settlement it reached with Mercola was made in good faith and thus bars the third-party contribution claims against it. Doc. 235. The motions are denied.

**Background**

On a Rule 12(b)(6) motion, the court must accept the third-party complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Third-Party Plaintiffs' favor, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the [third-party] complaint, documents that are critical to the [third-party] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Third-Party Plaintiffs' briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Third-Party Plaintiffs as those materials permit. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016).

Mercola's allegations against Third-Party Plaintiffs are set forth in a prior opinion, familiarity with which is assumed. 2015 WL 3545414 at *1-2. The third-party complaint

acknowledges the existence though not the truth of Mercola's allegations, *i.e.*, that Third-Party Plaintiffs breached their fiduciary duties to Mercola, made negligent misrepresentations, and committed legal malpractice in connection with Mercola's obtaining premium financed life insurance policies, and that as a result, Mercola incurred substantial losses when he surrendered those policies and repaid the loans that he had used to finance the premiums. Doc. 176 at ¶¶ 16-22. The third-party complaint proceeds to allege the following. On or about October 2013, when he still held the policies, Mercola retained Bennett, AXA Advisors, and Duggan to be his "Financial Advisory Team" and advise him about the policies. *Id*. at ¶¶ 23-25. Based on their advice, Mercola prematurely surrendered the policies, incurring losses alleged to exceed $3 million. *Id*. at ¶ 26. In advising Mercola to prematurely surrender the policies, Third-Party Defendants breached the duty of care that they owed Mercola, thus giving rise to third-party contribution liability to Third-Party Plaintiffs. *Id*. at ¶¶ 29-30, 34-35.

## Discussion

### I. Third-Party Defendants' Motion to Dismiss

#### A. Whether the Third-Party Claims Comply With Rule 14

Rule 14(a) states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Third-Party Defendants argue that Rule 14(a) allows a third-party complaint only if the third-party plaintiff alleges that the third-party defendant is derivatively liable to the third-party plaintiff for the plaintiff's claim against it. Doc. 198 at 7-8. In this, Third-Party Defendants are correct. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 368 n.3 (1978); *Hartford Acc. and Indem. Co. v. Sullivan*, 846 F.2d 377, 381 (7th Cir. 1988) ("[I]t is hard to see how [the requirements of Rule 14] could be fulfilled unless the third-party's

3

liability was derivative."). Third-Party Defendants then argue that the third-party complaint, which charges that they acted negligently towards Mercola, does not allege that they are derivatively liable to Third-Party Plaintiffs. Doc. 198 at 8-11. In this, they are wrong.

Whether derivative liability exists is a question of substantive law, which in this diversity suit is Illinois law. *See Ragusa v. City of Streator*, 95 F.R.D. 527, 528 (N.D. Ill. 1982) ("Though Rule 14(a) establishes the procedure for bringing in a third party, choice of law rules direct us to Illinois law to determine the substantive propriety of doing so."); 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1448, at 453-54 (3d ed. 2010) ("If the governing substantive law recognizes a right of contribution, impleader under Rule 14 is a proper procedure by which to seek relief from joint tortfeasors."). The JTCA states that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a). The third-party complaint alleges that "in the event" Third-Party Plaintiffs are held liable to Mercola, they should recover from Third-Party Defendants "by way of contribution … an amount as is commensurate with the relative degree of culpability or fault attributable" to Third-Party Defendants. Doc. 176 at ¶¶ 31, 36. Thus, *any* liability that Third-Party Defendants may have to Third-Party Plaintiffs depends on, and thus is derivative of, Third-Party Plaintiffs' liability to Mercola. It follows that the third-party complaints for contribution under the JTCA are proper under Rule 14(a). *See Dowe v. Nat'l R.R. Passenger Corp.*, 2003 WL 22383016, *4 (N.D. Ill. Oct. 17, 2003) ("If the particular alleged tortfeasor who is sued wants to protect itself against paying more than its 'fair share' of the plaintiff's damages, it can do so (if permitted by the

relevant jurisdiction's law) by making contribution claims against the other joint tortfeasors as third party claims under Rule 14.").

> B. Whether the Third-Party Complaint States a Viable Contribution Claim Under Illinois Law

As noted, the JTCA allows contribution claims only if the third-party plaintiff's liability arises from the "same injury" to the plaintiff as does the third-party defendant's liability. Third-Party Defendants argue that the third-party claims do not satisfy this requirement because they simply allege "a variation of 'it was him, not me.'" Doc. 198 at 9; Doc. 213 at 2 ¶¶ 5-6; Doc. 215 at ¶¶ 9-13. They are incorrect.

As the Supreme Court of Illinois has explained:

> [T]he proper focus of the "same injury" requirement is not the timing of the parties' conduct which created the injury, but the injury itself. The [plaintiff] has alleged that [the third-party plaintiffs] … have created a water pollution hazard. [The third-party plaintiffs], in turn, have alleged that [the third-party defendant] … has contributed to this same water pollution hazard. Assuming that the facts alleged in the … third-party complaint are true, the trier of fact could find that the conduct of the [third-party plaintiffs] and [the third-party defendant], although separate in time, contributed to produce the "same injury" ….

*People v. Brockman*, 592 N.E.2d 1026, 1030 (Ill. 1992); *see also Alper v. Altheimer & Gray*, 257 F.3d 680, 688 (7th Cir. 2001). Accordingly, the third-party defendant's conduct need not occur at the same time, or be of the same type, as the third-party plaintiff's conduct. Rather, the third-party plaintiff need only allege that, to the extent its own conduct injured the plaintiff, the third-party defendant's conduct contributed to or exacerbated the injury. *See Alper*, 257 F.3d at 688.

Third-Party Plaintiffs have pleaded just that. Mercola alleges that Third-Party Plaintiffs induced him to purchase an insurance product, that the product was not as advertised, and that he thus chose to surrender it, incurring losses in the process. Doc. 139 at ¶ 6. The third-party complaint alleges that, at Third-Party Defendants' urging, Mercola surrendered the insurance

5

product too early, exacerbating the damages he incurred from Third-Party Plaintiffs' conduct. Doc. 176 at ¶¶ 30, 34-35. This is sufficient to meet the "same injury" requirement.

Third-Party Defendants next argue that Third-Party Plaintiffs have not alleged facts sufficient to plead that they breached any duty to Mercola. Doc. 198 at 11-12; Doc. 213 at 2; Doc. 215 at 4-5. The core factual allegations against Third-Party Defendants are as follows:

> 29. [Third-Party Defendants] owed a duty of care to Dr. Mercola and breached the standard of care in the advice [they] rendered to Dr. Mercola regarding the existing premium financed life insurance policies and regarding available alternative options relating to that insurance.
>
> 30. The negligent advice rendered by [Third-Party Defendants] led to Dr. Mercola's decision to prematurely surrender the four Minnesota Life Policies, incurring the losses alleged to be in excess of $3 million.

Doc. 176 at ¶¶ 29-30. These allegations do more than merely provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action …." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Third-Party Plaintiffs allege that the breach of duty was in Third-Party Defendants' advice to Mercola that led him to "prematurely" surrender the policies. Doc. 176 at ¶ 30. "Prematurely" is the key word; the allegation is not that encouraging Mercola to surrender the policies was negligent in and of itself, but rather that it was negligent *because* the surrender was too early. This adequately states a claim for the purposes of Rule 12(b)(6).

Bennett and Duggan contend that the allegations regarding their conduct toward Mercola, while framed in the language of negligence or malpractice, actually sound in fiduciary duty. Doc. 213 at ¶¶ 9-14; Doc. 215 at ¶¶ 18-22. This is important, they maintain, because the JTCA requires that the third-party defendant from whom contribution is sought be subject to liability "in tort" to the original injured party, 740 ILCS 100/2(a), and breach of fiduciary duty is not a tort. Even assuming that fiduciary duty claims are not tort claims, this argument fails.

6

The allegations regarding Duggan, a law firm, sound in tort. Under Illinois law, attorneys may be subject to legal malpractice claims. *See Barth v. Reagan*, 564 N.E.2d 1196, 1199 (Ill. 1990). "[A] complaint against a lawyer for professional malpractice may be couched in either contract or tort and … recovery may be sought in the alternative." *Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992). Here, the third-party complaint plainly alleges that Duggan, as Mercola's counsel, owed a duty of care him, that Duggan breached that duty with its advice regarding the insurance policies, and that this breach caused Mercola to suffer harm. This allegation sounds in tort for purposes of a contribution claim under the JTCA.

According to Bennett, the third-party complaint alleges that he served as Mercola's insurance broker. Citing *Plumb v. Fluid Pump Services*, 124 F.3d 849, 858 (7th Cir. 1997), he argues that the relationship of an insurance broker to an insured is a fiduciary relationship, and therefore that any claim by an insured against a broker sounds in fiduciary duty, not tort. Doc. 213 at ¶ 11. It is true that an insurance broker has a fiduciary relationship with an insured, but it does not follow that *all* claims by an insured against a broker sound in breach of fiduciary duty; to the contrary, a fiduciary may be sued in tort by those to whom he owes a fiduciary duty.

The Illinois statute governing insurance brokers—the statute refers to "insurance producer, registered firm, and limited insurance representative," but that phrase has been held to include insurance brokers, *see Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 753 (Ill. 2015); *Garrick v. Mesirow Financial Holdings, Inc.*, 994 N.E.2d 986, 991 (Ill. App. 2013)—provides that brokers shall use "ordinary care and skill in renewing, procuring, binding, or placing the coverage requested …." 735 ILCS 5/2-2201(a). That is the language of tort. *See Nelson v. Union Wire Rope Corp.*, 199 N.E.2d 769, 770 (Ill. 1964) (citing the Restatement (First) of Torts for the proposition that "[i]t is axiomatic that every person owes to all others a duty to

7

exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act …."). Confirming the proposition that some claims by insureds against insurance brokers sound in tort, the statute further provides:

> No cause of action … against any insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct … involves the wrongful retention or misappropriation by the insurance producer, registered firm, or limited insurance representative of any money that was received as premiums, as a premium deposit, or as payment of a claim.

735 ILCS 5/2-2201(b). This provision expressly contemplates that some claims by an insured against an insurance broker will sound in fiduciary duty, while others will sound in tort. The third-party complaint here alleges that Bennett breached his tort duty of ordinary care in urging Mercola to prematurely surrender the insurance policies. It follows, at least at the pleading stage, the Bennett is properly subject to a third-party contribution claim under the JTCA.

### C. Whether the *Moorman* Doctrine Bars the Third-Party Claims Against Bennett

Bennett argues that the "economic loss doctrine," also known as the *Moorman* doctrine, *see Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982), bars any recovery against him in tort by Mercola, thus protecting him from any contribution liability. Doc. 215 at ¶¶ 15-20. *Moorman* provides that that a plaintiff cannot recover in tort for what is solely an economic loss, *see Moorman*, 435 N.E.2d. at 452, and its rule has been extended to the negligent performance of services. *See 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 350-51 (Ill. 1990); *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986). The third-party complaint alleges that Bennett negligently performed services for Mercola. Thus, unless some exception to the *Moorman*

8

doctrine applies, Bennett is not subject to liability in tort for his actions, and the third-party claims against him consequently fall outside the scope of the JTCA.

There traditionally have been three exceptions to the *Moorman* doctrine:

> (1) where the plaintiff sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e., fraud*; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

*In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (internal citations omitted). A fourth exception provides that where a service professional has duties to his client that arise independently of his contractual duties, the client may sue in tort for breach of those independent duties. As the Supreme Court of Illinois explained: "[T]he [*Moorman*] doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort …." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994). This extracontractual duty exception has been applied to exempt accountant and attorney malpractice suits from the *Moorman* doctrine. *See id.* at 514-15; *Collins*, 607 N.E.2d at 1189.

As noted, the Illinois insurance broker statute creates an extracontractual duty of "ordinary care and skill" on insurance brokers where they are "renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a). This statutorily created extracontractual duty gives rise to an exception to the *Moorman* doctrine.

The extracontractual duty exception would apply even if, as Third-Party Plaintiffs argue, their claims against Bennett allege not that he breached his duty as an insurance broker, but

9

rather that he was negligent "as Dr. Mercola's financial advisor." Doc. 230 at 6 (emphasis added). Illinois courts have not directly addressed whether claims against financial advisers fall within the extracontractual duty exception, but *Congregation of the Passion* provides guidance. In holding that the exception applies to accountants, *Congregation of the Passion* emphasized that an accountant's services in large part concern the provision of an intangible product:

> The characteristics of a tangible object are readily ascertainable, and they can be memorialized in a contract and studied by the parties. The characteristics of something intangible, however, are much more amorphous than the characteristics of something tangible. It is not necessary or generally possible to memorialize all the elements of "competent representation" in a contract. What is necessary to competently represent a client will normally vary with different situations and cannot be anticipated before performance begins. Further, the law has not traditionally required that these elements be included in the retention contract. Application of the *Moorman* doctrine limiting recovery of purely economic losses to contract, therefore, is inappropriate where a relationship results in something intangible.

636 N.E.2d at 515. In *Chicago Housing Authority v. J.A. Hannah Investment Advisory Service, Inc.*, 1996 WL 328033 (N.D. Ill. May 9, 1996), and quoting *Congregation of the Passion*, the court held that given the "degree of discretion and independence that cannot be 'memorialized in a contract and studied by the parties,'" the role of an investment advisor was sufficiently analogous to that of an attorney or accountant as to exempt professional negligence claims against investment advisors from the *Moorman* doctrine. *Id*. at *7.

*J.A. Hannah* is persuasive and leads to the same result here. The third-party complaint alleges that Mercola and Bennett entered into a contractual arrangement for Bennett to provide Mercola with financial advice concerning his insurance products. That relationship would not involve the provision of a "tangible" item. Given these allegations, Bennett had an extracontractual duty to Mercola as his financial advisor. Accordingly, whether they are

10

construed as claims against an insurance broker or against a financial advisor, the third-party claims against Bennett fall within the extracontractual duty exception to the *Moorman* doctrine.

> D. **Whether the Contributory Negligence Defense Bars the Contribution Claims Against Duggan**

Third-Party Plaintiffs assert contributory negligence as an affirmative defense to Mercola's claims. Doc. 145 at 48-49. Duggan argues that because it was Mercola's agent, any negligence on its part must be imputed to Mercola. Doc. 215 at ¶¶ 23-25. Thus, according to Duggan, because Third-Party Plaintiffs' liability to Mercola will be reduced by an amount commensurate with Mercola's negligence, and because Mercola's negligence will include Duggan's negligence because Mercola is Duggan's principal, Third-Party Plaintiffs will never pay more than their pro rata share. *Id*. at ¶ 25. As a result, Duggan continues, because the JTCA provides that the right of contribution exists only where one party has paid more than his pro rata share, Third-Party Plaintiffs' contribution claims under the JTCA are not viable. *Id*. at ¶ 26.

This argument suffers from a fundamental flaw: the third-party claims allege that Duggan breached a duty to Mercola, and Mercola cannot be held responsible under an agency theory for a tort that Duggan committed against him. It is true that the attorney-client relationship is governed, at least in part, by the law of agency. *See United States v. 7108 West Grand Ave.*, 15 F.3d 632, 634 (7th Cir. 1994) ("The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds."). And it likewise is true that, as a general matter, principals are liable for the torts of their agents. *See Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012). However, a necessary and obvious exception to this rule is an attorney's malpractice against the client himself. If an attorney commits malpractice, breaching his duty of competent representation to the client, the attorney cannot plausibly maintain that because malpractice is a tort, his liability must be imputed to the client. If this

were true, attorney malpractice actions would be impossible, because the attorney (as an agent) could always assert that the client bringing the malpractice suit is ultimately liable as the principal. Given the centuries-old origins of the legal malpractice action, *see* George S. Mahaffey, Jr., "Cause-in-Fact and the Plaintiff's Burden of Proof with Regard to Causation and Damages in Transactional Legal Malpractice Matters: The Necessity of Demonstrating the Better Deal," 37 *Suffolk U. L. Rev.* 393, 398-402 (2004), it is implausible to conclude that under agency law, clients are unable to recover on legal malpractice claims. It follows that a contributory negligence defense cannot ground a dismissal of the third-party claims against Duggan.

## II. Duggan's Motion for a Good Faith Finding

Duggan also has moved for a good faith finding, contribution bar, and dismissal with prejudice on the basis of a settlement it reached with Mercola. Doc. 235. The settlement requires Duggan to pay Mercola $25,000, in exchange for Mercola's releasing Duggan from all claims. Doc. 235-1 at ¶¶ 1-2. The settlement is conditioned on this court's finding that it satisfies the JTCA's good faith requirement. *Id*. at ¶ 4.

The JTCA provides that a third-party defendant potentially liable in contribution to a third-party plaintiff may avoid contribution liability by entering into a good faith settlement with the plaintiff. *See* 740 ILCS 100/2(c)-(d). The settling parties bear the burden of making a preliminary showing of good faith, which may be accomplished by producing a valid settlement agreement. *See Johnson v. United Airlines*, 784 N.E.2d 812, 820 (Ill. 2003). Once this showing is made, "the party challenging the good faith of the settlement need prove the absence of good faith by a preponderance of the evidence." *Ibid*. "[W]hether a settlement satisfies the good-faith requirement … is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Id*. at 821. "A settlement will not be found to

be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud." *Ibid*.

Third-Party Plaintiffs have met their burden of showing that the settlement was not made in good faith. As an initial matter, the settlement is for $25,000, less than one percent of Mercola's claimed damages. A small settlement does not necessarily entail bad faith. *See Miranda v. Walsh Grp., Ltd.*, 997 N.E.2d 895, 899 (Ill. App. 2013); *Lard v. AM/FM Ohio, Inc.*, 901 N.E.2d 1006, 1022 (Ill. App. 2009). In *Miranda* and *Lard*, for example, the settling defendants had very limited assets available to satisfy a judgment that was likely to exceed insurance limits, thus making a modest settlement a reasonable outcome. *See Miranda*, 997 N.E.2d at 900; *Lard*, 901 N.E.2d at 1022-23. Nothing in the record suggests that proceeding against Duggan would present comparable challenges. Duggan does argue that its modest $25,000 settlement with Mercola is reasonable because a judgment against it is unlikely, but at the pleading stage, the court cannot evaluate the strength of Third-Party Plaintiffs' claim that Duggan provided negligent advice to Mercola. At this point, then, the settlement's size strongly suggests a lack of good faith in the form of collusion between lawyer (Duggan) and client (Mercola). *See Cianci v. Safeco Ins. Co. of Ill.*, 826 N.E.2d 548, 562 (Ill. App. 2005) (reversing a good faith finding made at the pleading stage, reasoning that the settling parties had provided "no information to substantiate why the settlement amounts were … reasonable").

The close relationship between Mercola and Duggan also suggests a lack of good faith. In *Warsing v. Material Handling Services*, 648 N.E.2d 1126 (Ill. App. 1995), the court deemed the settling parties' "close personal relationship" as "lending suspicion to the settlement …." *Id*. at 1129. Duggan argues that *Warsing* involved a "personal" relationship, while its relationship with Mercola is "not personal, [but] rather … strictly attorney-client." Doc. 248 at 7. This

argument forgets that an attorney-client relationship often is as close, if not closer, than many personal relationships. *See* Dorothy Williams, "Attorney Association: Balancing Autonomy and Anti-Discrimination," 40 *J. Legal Prof.* 271, 272-73 (2016) ("[T]he attorney-client relationship has traditionally been seen as an 'intimate' one. … [A]n attorney 'adopts your interests as his own,' just as a friend would."); Charles Fried, "The Lawyer as Friend: The Moral Foundations of the Lawyer-Client Relationship," 85 *Yale L. J.* 1060, 1071 (1976). Duggan and Mercola have had an attorney-client relationship for several years, Doc. 248 at 5, making the relationship "close" for purposes of the good faith inquiry.

In sum, because the Mercola-Duggan relationship is close, the settlement is paltry compared to the asserted liability, and there is no basis on the pleadings to conclude that recovery against Duggan is unlikely, the court finds that the Mercola-Duggan settlement is not a good faith settlement within the meaning of the JTCA. Duggan accordingly is not shielded from contribution liability under the JTCA.

## Conclusion

Third-Party Defendants' motions to dismiss and Duggan's motion for a good faith finding are denied. Given the upcoming holidays, Third-Party Defendants need not answer the third-party complaints until January 5, 2017.

December 12, 2016

United States District Judge